**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

KELLI WILSON,

    Plaintiff,

v.                                                                 Case No. 3:19-cv-822-J-34PDB

MIKE WILLIAMS, in his official capacity
as Sheriff of the Consolidated City of
Jacksonville, Florida, et al.,

    Defendants.

## O R D E R

**THIS CAUSE** is before the Court on Defendant Sheriff Williams'[s] Motion to Dismiss (Doc. 8; Motion), filed on August 5, 2019. In the Motion, Williams requests that the Court dismiss Plaintiff Kelli Wilson's claims of municipal liability, battery, and false imprisonment. Wilson filed a response in opposition to the Motion on August 19, 2019. See Plaintiff's Response to Defendant Sheriff Williams's Motion to Dismiss (Doc. 13; Response). Accordingly, the Motion is ripe for review.

**I.    Background[1]**

On the evening of July 15, 2015, Wilson received a phone call from her husband, Eric Smith, who informed Wilson that he was being pulled over by officers of the Jacksonville Sheriff's Office (JSO). See Complaint and Demand for Jury Trial (Doc. 1;

---

[1] In considering a motion to dismiss, the Court must accept all factual allegations in the complaint as true, consider the allegations in the light most favorable to the plaintiff, and accept all reasonable inferences that can be drawn from such allegations. Miljkovic v. Shafritz and Dinkin, P.A., 791 F.3d 1291, 1297 (11th Cir. 2015) (quotations and citations omitted). As such, the recited facts are drawn from the Complaint and may differ from those that ultimately can be proved.

Complaint) ¶ 9. Thereafter, Wilson drove to the convenience store where the officers were arresting Smith for driving with a suspended license. Id. ¶¶ 10, 12. Upon exiting her car, Wilson began filming the arrest with her cell phone. Id. ¶ 14. Wilson identified herself to Officer C.W. Jackson and asked him for information regarding Smith's arrest. Id. ¶ 15. Because Wilson owned the vehicle that Smith was driving, id. ¶ 11, Officer M.E. Pfenning asked Wilson for consent to search the vehicle, which she gave, id. ¶ 17. During the search, Wilson stood on the sidewalk next to the front doors of the convenience store. Id. ¶ 18. After the search of the vehicle, Bias and Pfenning approached Wilson and asked her to identify herself. Id. ¶ 19. In doing so, Bias noticed Wilson's phone in her hand, and without explanation, he ordered Wilson to surrender the phone. Id. ¶¶ 20-22. When Wilson refused to do so, Bias "reached toward [Wilson] in an attempt to take her phone from her hand," id. ¶¶ 23-24, but Wilson "recoiled," and Bias was unable to obtain the phone, id. at ¶ 25. Bias then threatened to punch Wilson in the face. Id. ¶ 26. "As [Wilson] hugged her phone to her chest, [ ] Bias announced that [Wilson] was under arrest." Id. ¶ 27. Bias and Pfenning then advanced toward Wilson, pinned her against the convenience store window, "and aggressively grabbed her arms[.]" Id. ¶ 28. Wilson "again recoiled, attempting to secure her phone from [the officers'] attempts to wrench it away from her." Id. ¶ 29. In response, Bias punched Wilson in the face, causing her to fall into the convenience store window, after which Bias and Pfenning slammed Wilson onto the ground. Id. ¶¶ 30-32. Bias and Pfenning put their full weight on Wilson and grabbed her arms, while Jackson looked for the phone. Id. ¶¶ 33-39. Ultimately, Bias pulled Wilson's hair until her body lifted so that Jackson could grab Wilson's phone. Id. ¶¶ 40-41. After confiscating the cell phone, the officers handcuffed Wilson. Id. ¶¶ 50-

52. The officers' "unwarranted use of force and unlawful arrest of [her] lasted for just over a minute." Id. ¶ 55.

Based on these events, Wilson initiated this action on July 11, 2019, by filing a six-count Complaint against Bias, Pfenning, and Jackson, as well as Williams, in his official capacity as Sheriff of the City of Jacksonville, Florida.[2] As relevant to the instant Motion, in Count IV, Wilson asserts a claim of municipal liability against Williams pursuant to 42 U.S.C. § 1983.[3] Id. ¶ 83-85. In support of this claim, Wilson alleges that Williams, "his agents and employees, acting within their authority and under color of state law, instituted and followed practices, customs, and policies which directly resulted in the false arrest and use of excessive force against [Wilson], which were the moving force causing her injuries and is actionable under [§ 1983] as a violation of the First, Fourth, and Fourteenth Amendments to the United States Constitution." Id. ¶ 84. Wilson further alleges that JSO "has a widespread custom and practice of using excessive force." Id. Alternatively, Wilson asserts that by failing to discipline JSO officers for the use of excessive force against her, "Williams has ratified his officers' decision and the reasons for those decisions, thus constituting a practice, custom, or policy." Id. Wilson also alternatively alleges that Bias, Pfenning, and Jackson, in the context of their encounter with Wilson, were final policy makers for JSO, "as their decisions were not immediately or effectively reviewable." Id. As evidence of JSO's alleged custom or policy of using excessive force, Wilson points to

---

[2] A suit against an individual in his official capacity is "to be treated as a suit against the entity" the individual represents. See Kentucky v. Graham, 473 U.S. 159, 165-66 (1985); Yeldell v. Cooper Green Hosp., Inc., 956 F.2d 1056, 1060 (11th Cir. 1992). Here, Sheriff Williams represents the City of Jacksonville (the City).

[3] In Counts I though III, Wilson asserts the following § 1983 claims against the officers: false arrest against Bias (Count I); excessive force against Bias, Pfenning, and Jackson (Count II); and First Amendment retaliation against Bias (Count III).

- 3 -

thirteen similar instances where JSO officers allegedly used excessive force in making arrests, ten of which pre-date Wilson's arrest. Id. ¶¶ 57-69. Wilson alleges that JSO failed to reprimand or discipline the officers involved in seven of the incidents. Id. ¶¶ 58, 61, 62, 63, 64, 65, 66.

In Count V, Wilson asserts a state law battery claim against Williams for giving his officers authority to use excessive force against her. Id. ¶¶ 86-90. Finally, in Count VI, Wilson asserts a state law false imprisonment claim against Williams based on his employees' "unreasonable and unwarranted" detention of her. Id. ¶¶ 91-94.

## II. Standard of Review

In ruling on a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002); see also Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002). In addition, all reasonable inferences should be drawn in favor of the plaintiff. See Randall v. Scott, 610 F.3d 701, 705 (11th Cir. 2010). Nonetheless, the plaintiff must still meet some minimal pleading requirements. Jackson v. Bellsouth Telecomm., 372 F.3d 1250, 1262-63 (11th Cir. 2004) (citations omitted). Indeed, while "[s]pecific facts are not necessary[,]" the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Further, the plaintiff must allege "enough facts to state a claim that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556

U.S. at 678 (citing Twombly, 550 U.S. at 556). A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Twombly, 550 U.S. at 555 (internal quotations omitted); see also Jackson, 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (internal citation and quotations omitted). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]" which simply "are not entitled to [an] assumption of truth." See Iqbal, 556 U.S. at 678, 680. Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face[.]'" Id. at 678 (quoting Twombly, 550 U.S. at 570).

### III. Discussion

#### A. Count IV – Municipal Liability

In moving to dismiss Count IV, Williams contends that Wilson's Complaint "fails to identify with any factual specificity any municipal custom, policy, or practice that existed and caused any violation of [Wilson's] constitutional rights." Motion at 6. Williams also argues that the Complaint fails to sufficiently allege how Williams "sanctioned unspecified practices, customs, or policies that directly resulted in deliberate indifference to her constitutional rights." Id. at 6-7.

A municipality may be liable in a § 1983 action "only where the municipality itself causes the constitutional violation at issue." Cook ex. rel. Estate of Tessier v. Sheriff of Monroe County, 402 F.3d 1092, 1115 (11th Cir. 2005) (citations omitted). Thus, a plaintiff

must establish that an official policy or custom of the municipality was the "moving force" behind the alleged constitutional deprivation. See Monell v. Dept. of Soc. Servs. of City of New York, 436 U.S. 658, 693-94 (1978). "A policy is a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality." Sewell v. Town of Lake Hamilton, 117 F.3d 488, 489 (11th Cir. 1997) (citation omitted). The policy requirement is designed to "'distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'" Grech v. Clayton County, 335 F.3d 1326, 1329 n.5 (11th Cir. 2003) (en banc) (quotation omitted). Indeed, municipal liability arises under § 1983 only where "'a deliberate choice to follow a course of action is made from among various alternatives' by city policymakers." City of Canton v. Harris, 489 U.S. 378, 389 (1989) (quoting Pembaur v. Cincinnati, 475 U.S. 469, 483-84 (1986)). A municipality will rarely have an officially-adopted policy that permits a particular constitutional violation; therefore, to state a cause of action for damages under § 1983, most plaintiffs must demonstrate that the municipality has a custom or practice of permitting the violation. See Grech, 335 F.3d at 1330; McDowell v. Brown, 392 F.3d 1283, 1289 (11th Cir. 2004). The Eleventh Circuit has defined "custom" as "a practice that is so settled and permanent that it takes on the force of law" or a "persistent and wide-spread practice." Sewell, 117 F.3d at 489.

Additionally, a municipality may be liable "on the basis of ratification when a subordinate public official makes an unconstitutional decision and when that decision is then adopted by someone who does have final policymaking authority." Hoefling v. City of Miami, 811 F.3d 1271, 1279 (11th Cir. 2016) (citing Matthews v. Columbia County, 294

F.3d 1294, 1297 (11th Cir. 2002)). In this context, the "final policymaker, however, must ratify not only the decision itself, but also the unconstitutional basis for it." Matthews, 294 F.3d at 1297-98 (internal quotations and citations omitted). As implicated in this case, the Eleventh Circuit has also suggested that a City's "persistent failure to take disciplinary action against officers can give rise to the inference that a municipality ratified conduct, thereby establishing a 'custom' within the meaning of Monell." Fundiller v. City of Cooper City, 777 F.2d 1436, 1443 (11th Cir. 1985); see also Rivas v. Figueroa, Case No. 11-cv-23195, 2012 WL 1378161, *3 (S.D. Fla. Apr. 20, 2012) ("A municipality may be liable for violating Section 1983 even where the municipality provides rules and regulations for the operation of its police department, if those rules were repeatedly violated and the municipality failed to rectify the situation.") (citing Depew v. City of St. Marys, 787 F.2d 1496, 1499 (11th Cir.1986)).

In her Complaint, Wilson alleges, inter alia, that JSO "has a widespread custom and practice of using excessive force," which "resulted in the false arrest and use of excessive force against [Wilson]." Id. ¶¶ 84. To support this allegation, Wilson alleges that JSO officers have used excessive force in making arrests on at least thirteen prior occasions, ten of which pre-date Wilson's arrest. Id. ¶¶ 57-69. Wilson further alleges that JSO failed to reprimand or discipline the officers involved in at least seven of the alleged incidents. Id. ¶¶ 58, 61, 62, 63, 64, 65, 66. Contrary to Williams's arguments, Wilson's allegations are not conclusory. Indeed, Wilson alleges the prior incidents of excessive force with specificity by providing the name of the arrestees and the dates of the arrests as well as generally describing the circumstances of the arrests. Taking these allegations as true, which the Court must at this stage of the proceedings, the Court concludes that

the Complaint contains sufficient allegations to plausibly state a municipal custom to survive a motion to dismiss. See Martinez v. Sheriff Mike Williams, et al., Case No. 3:17-cv-1319-J-20MCR (M.D. Fla. Sept. 26, 2019) (Doc. 74) (denying motion to dismiss municipal liability claim supported by similar allegations of prior incidents of excessive force, concluding that the allegations "demonstrate JSO officers have, since 2004, engaged in the practice of using excessive force on Jacksonville residents" and that "the City repeatedly took no corrective steps to remedy the officers' actions"); Rivas, 2012 WL 1378161, at *3 (concluding that plaintiff stated a claim for a custom or practice of excessive force by identifying sixteen prior instances in which officers had used excessive force and had not been disciplined for doing so).

Nevertheless, Williams argues that Count IV is due to be dismissed because "the Complaint alleges no facts in common between the thirteen incidents and the instant case." See Motion at 7. In support of this argument, Williams relies on Tucker v. Bradshaw, Case No. 11-80058-CIV-RYSKAMP/VITUNAC, 2012 WL 13018687, at *1 (S.D. Fla. Jan. 19, 2012), in which the district court dismissed a municipal liability claim because the plaintiff failed "to allege that any of the alleged prior complaints were substantiated" or "that any of the alleged prior complaints were based on similar circumstances." Id. at *3. Upon consideration, the Court finds Tucker to be easily distinguishable from this case. As Wilson correctly points out, the plaintiff in Tucker alleged a municipal liability claim based on a theory of inadequate training and supervision, and thus had different pleading requirements from those applicable to Wilson's claim. Moreover, the plaintiff in Tucker alleged that the sheriff's department failed to adopt a policy of addressing the arrest and transportation of physically disabled individuals, but the plaintiff failed to allege any prior

incidents involving the improper arrests of disabled individuals, relying instead only on the high number of disabled individuals in the county. See id. at *3. Here, the common link is the alleged use of excessive force in arresting individuals who are not resisting. The details of each particular arrest need not be identical. Thus, the Court rejects Williams's argument that the alleged prior incidents are not sufficiently similar to Wilson's own arrest. Williams also argues that "the past complaints of police misconduct must have merit."[4] See Motion at 8-9 (emphasis omitted). In support of this argument, Williams relies almost exclusively on cases resolved at the summary judgment or trial stage where the plaintiffs' burden of proof required them to substantiate their allegations. See id. at 8. Here, however, the Court must accept Wilson's nonconclusory factual allegations in the Complaint as true. See Ashcroft, 556 U.S. at 678. Thus, the Court also rejects the suggestion that Wilson must substantiate the wrongfulness of the conduct involved in the prior incidents of excessive force at this stage of the proceedings. Accordingly, the Motion is due to be denied as to Count IV.

### B. Counts V and VI – Battery and False Imprisonment

In Counts V and VI, Wilson asserts state law claims of battery and false imprisonment against Williams, based on Bias, Pfenning, and Jackson's actions when they

---

[4] Williams argues that the allegations in the Complaint regarding JSO's use of force against Colin Runge, see Complaint ¶ 60, and Larue Perkins, id. ¶ 61, were not substantiated because, in the § 1983 actions brought by Runge and Perkins against the City, the courts granted summary judgment in the City's favor on the municipal liability claims. See Motion at 9 (citing Runge v. Snow, Case No. 3:10-cv-900-J-20JRK (M.D. Fla. May 31, 2012) (Doc. 57; Runge Order); Perkins v. Tolen, Case No. 3:10-cv-81-J-37TEM (M.D. Fla. June 1, 2012) (Doc. 88; Perkins Order)). Williams's reliance on these rulings is misplaced. While prior findings of municipal liability for excessive force would aid in satisfying Wilson's burden, such findings are not necessary for her to prevail. Instead, Wilson may be able to prevail, in part, by substantiating the prior instances of excessive force by JSO officers, which she identifies in her Complaint. Notably, the courts in Runge and Perkins granted summary judgment as to municipal liability, but denied the officers' motions for summary judgment on the issue of excessive force, and the parties settled before that issue could be resolved. See Runge Order at 6-12; Perkins Order at 11-19.

arrested Wilson. See Complaint ¶¶ 86-94. In moving to dismiss these counts, Williams asserts that Count V does not "establish[ ] that [the] touching exceeded the right of the officers to use physical coercion during the lawful arrest that lasted just over a minute." Motion at 12. Similarly, Williams argues that in Count VI Wilson fails to allege facts to show "that the restraint was unreasonable and unwarranted." Id. Underlying these arguments is Williams's assumption that Wilson was lawfully arrested for resisting an officer without violence, in violation of Florida Statute section 843.02, "when she 'recoiled' and refused commands given by the officers after she responded to the location where they were arresting her husband." Id. at 11.

Under Florida law, a battery occurs when a person "actually and intentionally touches or strikes another person against the will of the other" or "intentionally causes bodily harm to another person." Fla. Stat. § 784.03. Additionally, "[t]he essential elements of a cause of action for false imprisonment include: (1) the unlawful detention and deprivation of liberty of a person; (2) against that person's will; (3) without legal authority or 'color of authority'; and (4) which is unreasonable and unwarranted under the circumstances." Mathis v. Coats, 24 So. 3d 1284, 1289 (Fla. 2d Dist. Ct. App. 2010) (citations omitted).

In Count V, Wilson alleges that Bias, Pfenning, and Jackson "actually and intentionally struck [Wilson] against her will, without legal justification." Complaint ¶ 88. In the Complaint, she sets forth detailed allegations regarding the manner of her arrest, including nonconclusory allegations that the officers struck her multiples times without justification. Id. ¶¶ 30-55. In Count VI, Wilson alleges that the officers "unlawfully restrained [Wilson] against her will under circumstances where such detention was

unreasonable and unwarranted" and that the basis for the detention lacked foundation. See Complaint ¶ 93. Importantly, the thrust of Wilson's Complaint is that she was falsely arrested for filming her husband's arrest and/or refusing to relinquish her cell phone to the officers. While Williams is correct that "a law enforcement officer may arrest a person without a warrant when '[t]he person has committed a felony or misdemeanor or violated a municipal or county ordinance in the presence of the officer,'" see Motion at 11 (quoting Fla. Stat. § 901.15), assuming the allegations of the Complaint to be true, it is not evident that the officers witnessed Wilson commit a felony or misdemeanor in their presence. See generally Williams v. State, 727 So. 2d 1050, 1053 (Fla. 2d Dist. Ct. App. 1999) ("Florida law allows one who is illegally being arrested to resist that arrest without violence."); Bowens v. Superintendent of Miami S. Beach Police Dept., 557 F. App'x 857, 863 (11th Cir. 2014) ("A warrantless arrest without probable cause violates the Constitution and provides a basis for a section 1983 claim. An arrest on a public street simply for refusal to turn over personal property on demand is a plausible basis for such a claim." (internal quotation marks and citation omitted)). Thus, the Court finds that Wilson has alleged sufficient facts to plausibly state a claim for battery and false imprisonment. As such, the Motion is due to be denied as to Counts V and VI.[5]

---

[5] It is possible that the battery claim would be subsumed by the false imprisonment claim. See e.g., Williams v. Sirmons, Case No. 3:06-cv-686-J-34MCR, 2010 WL 11639651, at *3 (M.D. Fla. Apr. 30, 2010) (concluding, in different circumstances, "that Plaintiff's state law battery claim is not viable as an independent tort but is rather subsumed by her state law false arrest claim") (collecting cases); Tepper v. Canizaro, Case No. 6:04-cv-1257-ORL-31DAB, 2005 WL 2484644, at *8 n.32 (M.D. Fla. Oct. 7, 2005) (similar); Neal v. City of Tampa, Case No. 8:09-cv-40-T-30EAJ, 2009 WL 10708305, at *3 (M.D. Fla. July 2, 2009) (similar).

Accordingly, it is

**ORDERED**:

1. Defendant Sheriff Williams' Motion to Dismiss (Doc. 8) is **DENIED**.

2. Defendant shall respond to the Complaint (Doc. 1) in accordance with the requirements of Rule 12, Federal Rules of Civil Procedure.

**DONE AND ORDERED** in Jacksonville, Florida on November 26, 2019.

MARCIA MORALES HOWARD
United States District Judge

lc23

Copies to:

Counsel of Record